FILED

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Augusta Division

2007 SEP 14 AM 9:15

U.S. BANKRUPTCY COURT
AUGUSTA, GA
SAMUEL L. KAY, CLERK

| | |
|---|---|
| IN RE: MICHAEL LEARY )<br>)<br>Debtor )<br>)<br>)<br>_____ )<br>)<br>MICHAEL LEARY )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>ILLINOIS STUDENT )<br>ASSISTANCE COMMISSION )<br>)<br>Defendant ) | CHAPTER 7 CASE<br>NUMBER 02-14048<br><br><br><br><br><br>ADVERSARY PROCEEDING<br>NUMBER 04-01080 |

**MEMORANDUM OPINION AND ORDER**

This matter is before me on remand from the United States District Court for the Southern District of Georgia, which reversed my March 23, 2006, judgment discharging the student loan debt ("Loans") owed by Debtor Michael Leary to the Illinois Student Assistance Commission. See Illinois Student Assistance Commission v. Leary, Civil Action No. CV 106-062 (S.D. Ga. Jan. 11, 2007). The Order of the District Court reinstated the Loans and requires me now to determine whether Leary made a good faith effort to repay the Loans "during the

AO 72A
(Rev. 8/82)

entirety of the pendency of th[e] obligation." Id. at 13. I conclude for the reasons that follow that Leary failed to prove by a preponderance of the evidence that he made the required good faith effort.

## Background

At close of the initial trial of this adversary proceeding, I set forth findings of fact and conclusions of law that Leary had met his burden under 11 U.S.C. § 523(a)(8) to establish undue hardship on himself and his dependents if he were required to repay the Loans. On appeal, the District Court held that I did not err in concluding that Leary had satisfied the first two prongs of the applicable test under Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2d Cir. 1987).[1] However, because I did not determine what efforts Leary made to repay the Loans from 2000 to 2002, the "good

---

[1] Under the Brunner test for determining the dischargeability of a student loan obligation under § 523(a)(8), the debtor must prove

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [him]self and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

831 F.2d at 396. The 11th Circuit adopted the Brunner test in Hemar Ins. Corp. of Am. v. Cox, 338 F.3d 1238 (11th Cir. 2003).

faith" prong of the test was not satisfied, and thus the judgment could not be affirmed.

The District Court noted that Leary admitted he had not made any payments on the Loans since the year 2000. Accordingly, the notice of hearing on remand informed the parties that this proceeding would be limited to the time between the date of Leary's last payment on the Loans in 2000 and the date of the filing of his bankruptcy petition on November 15, 2002.

### Findings of Fact

The facts established by the evidence at the previous trial and the determinations left undisturbed by the District Court bear repeating. Leary is a nurse anesthetist, and his former wife Wilda is a physician who is board-certified in internal medicine and pediatrics. Leary and Wilda were married for almost fifteen years, during which time Leary completed his undergraduate and graduate nursing degrees and began work as a nurse anesthetist, and Wilda completed her medical training and began her medical practice.

In 1997, the couple consolidated their student loans, the overwhelming majority of which were Wilda's, creating the obligation that is at issue in this adversary proceeding. Leary bought a disability insurance policy on Wilda to make certain

that the Loans would be re-paid regardless of whether Wilda was able to work.

At the time of the initial trial, the couple had been divorced for approximately six months. Leary was living in a two-bedroom apartment and working as a nurse anesthetist at a hospital in Augusta, Georgia. Wilda was not employed and was living in Birmingham, Alabama, collecting $5,000 a month tax-free from the disability policy Leary had bought for her and $2,400 a month child support from Leary for the couple's four children. Wilda, who has bipolar disorder, has become disabled as a result of depression.

Wilda no longer has any obligation on the Loans, a discharge having been entered as a result of a default judgment in an adversary proceeding to determine dischargeability in her chapter 7 bankruptcy case, which she filed without Leary's knowledge in May 2002.[2] Her discharge left Leary the sole obligor on the Loans, which at the time of the initial trial totaled approximately $190,000, payable at $900 a month.

I found Leary's testimony in the prior proceeding to be truthful concerning his budget, his living expenses, and the extraordinary recurring medical expenses of his children. The children, who range in age from six to eleven years, are

---

[2] In re Wilda C. Leary, ch. 7 case #02-11443, filed May 2, 2002, discharged Aug. 22, 2002 (Bankr. S.D. Ga. 2002).

afflicted variously with Tourette Syndrome, asthma, and hearing loss requiring speech therapy. In addition, they all participate in weekly psychological counseling for children of divorce. Leary's net income is approximately $5,500 a month, not including overtime pay that I held should not be considered in the discharge determination. Even with overtime, Leary can barely meet his basic monthly living expenses of approximately $5,700, more than forty percent of which goes to child support payments, and in addition pay his children's out-of-pocket medical bills of approximately $450 a month. I held that Leary simply did not have the money to pay $900 a month on a $190,000 debt in addition to his other obligations.

At the hearing on remand, Leary offered no documentary evidence--no tax returns, canceled checks, payment history for the Loans or other debts, proof that the Loans were ever in forbearance, or financial records of any kind. Thus the only evidence I consider besides Leary's testimony is the record from the prior proceeding, the Timeline and the Income 2000-2002 chart submitted by the Illinois Student Assistance Commission, Leary's petition, and Wilda's petition. Based on this evidence, I find the following facts concerning Leary's financial situation during the time period at issue.

During 2000, the Learys lived together in the same household and earned a total of approximately $205,000,

according to the Statements of Financial Affairs attached to their respective bankruptcy petitions and according to Leary's testimony (Remand Tr. 8:18-25). Wilda was terminated from her job around the middle of that year, the couple's children began incurring medical expenses, and at some point in 2000, Leary stopped making payments on the Loans. I make no finding as to the date of the last payment, because Leary offered conflicting testimony, stating first that "we were paying on them" in 2000 (Remand Tr. 10:1) and then that they stopped making payments when Wilda lost her job (Remand Tr. 11:24 - 12:1), and finally that he could not recall making any payments on the Loans that year (Remand Tr. 41:12-14).[3]

Similarly, I make no finding as to whether the Loans were placed into forbearance. Leary testified first that he believed he had put the Loans into forbearance, but could not recall a specific date. (Remand Tr. 12:21-24.) Later, he testified that he was "having discussions" about putting the Loans into forbearance in "2000, 2001" (Remand Tr. 78:3-8), but also that he was "in the process of trying to work out this forbearance" when he learned of Wilda's bankruptcy (Remand Tr. 78:9-11). Finally, Leary testified that he did not recall whether the loan was out of forbearance at any time between

---

[3] Citations to "Remand Tr." refer to the transcript of the proceeding on remand. The citation to "Trial Tr." refers to the transcript of the initial trial.

2000 and the filing of his bankruptcy petition. (Remand Tr. 80:11-14.)

The Learys continued to live together until November 2001, when Leary moved out and rented an apartment. Wilda's employment was erratic that year, and Leary testified that for the first six months of 2001, the family "lived basically on credit cards" (Remand Tr. 19:3-11). Total income for the Learys during 2001 was approximately a quarter-of-a-million dollars-- whether $229,000 as indicated by the Learys' Statements of Financial Affairs; or $269,000 as indicated by Wilda's Statement of Financial Affairs and Leary's testimony about his income that year (Remand Tr. 15:13-15).[4] Leary testified that medical expenses for the children in 2001 were comparable to their current medical expenses (Remand Tr. 40:18 - 41:3), but he also did not deny testifying at deposition that his oldest son's Tourette Syndrome was not diagnosed until after Leary's bankruptcy filing (Remand Tr. 53:14-24). Leary did not make any payments on the Loans in 2001.

From January 2002 until the couple reconciled in June or July of 2002, Leary paid $3900 a month in child support. He

---

[4] The Timeline and Income 2000-2002 chart entered into evidence by the Illinois Student Assistance Commission attribute additional income to the Learys for 2001 and 2002. I do not consider these figures because they are based in part on Leary's 2005 testimony at deposition, the transcript of which is not part of the record. I declined to admit the transcript into evidence in the remand proceeding based on counsel's representation that the purpose of the transcript was impeachment and on counsel's acknowledgement that inconsistencies from Leary's prior testimony were documented on the record.

also paid rent on his apartment, a car payment, mounting credit card bills, and ongoing medical expenses for his children. By May 2002, Wilda was no longer employed, and she filed her bankruptcy petition. In September 2002, Leary took money out of his retirement fund to pay $17,000 toward the Learys' credit card debt, testifying on cross-examination that paying this debt was more important at the time than making any payments on the Loans (Remand Tr. 69:14 - 70:3). He filed his bankruptcy petition on November 15, 2002. The Learys' total income for 2002 was $121,100 as indicated on their respective Statements of Financial Affairs; or $171,100 according to Wilda's Statement of Financial Affairs and Leary's testimony about his income that year (Remand Tr. 57:15-16). Leary did not make any payments on the Loans in 2002.

### Conclusions of Law

The "good faith" prong of the Brunner test for the undue hardship exception under § 523(a)(8) requires the debtor to show either that he made a good faith effort to repay the student loan debt at issue or that his default resulted from factors beyond his reasonable control. Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 2007 WL 2263097, at *5 (11th Cir. 2007) (citing In re Robertson, 999 F.2d 1132, 1136 (7th Cir.

1993)). The Brunner standard requires proof by a preponderance of the evidence. Id. at *3.

Here, Leary neither proved that during the relevant period he made an effort to repay the Loans nor that his failure to repay them was due to factors beyond his reasonable control. Leary did not show that he made any payments on the Loans during the time period at issue or that the Loans were in forbearance so that no payments were due. Leary testified generally as to the credit card bills, the children's medical expenses, and the financial burden of maintaining separate households during the separation. However, Leary did not establish why he and his wife, who together earned a substantial six-figure income during each of the years at issue, were unable to pay any money at all toward the Loans during a period of almost three years. Further, when Leary cashed out his retirement to pay down the credit cards, he could have paid some or all of that money toward the Loans, and he did not.

In summary, Leary's inconsistent testimony, the choices he made concerning which bills he would pay, and the complete lack of any evidence that would support those choices require me to conclude that Leary did not meet his burden under the third prong of the Brunner test for a § 523(a)(8) determination of discharge. Unfortunately, this conclusion does

not alter my finding in the initial trial that Leary does not have the money to repay this debt now or over any period of time, due in part to his children's long-term medical problems; and it also does not alter my conclusion that Leary's children will suffer if the Loans are excepted from discharge.

It is therefore ORDERED that the debt owed by Michael Leary to the Illinois Student Assistance Commission is excepted from discharge. A separate judgment will be entered as required by Fed. R. Civ. P. 58.

John S. Dalis
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 11 day of September, 2007.